F
CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

MICHAEL G. LAGRAMA (CABN 252734)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-436-7241
    FAX: (415) 436-7234
    Michael.Lagrama@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 5:24-cr-00032-PCP |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| VICTORIANO ROMERO, | Sentencing Date: August 6, 2025<br>Sentencing Time: 10:00 a.m. |
| Defendant. | |

## I.    INTRODUCTION

On January 23, 2024, defendant Victoriano Romero was indicted on one count of Conspiracy to Transport Stolen Goods in Foreign Commerce in violation of 18 U.S.C. §§ 371, 2314 (Count One) and two counts of Transportation of Stolen Goods in Foreign Commerce in violation of 18 U.S.C. §§ 2314, 2 (Counts Two and Three). The Indictment contains a forfeiture allegation regarding proceeds or property obtained directly or indirectly as a result of the violations. On March 12, 2025, Romero pleaded guilty to Counts Two and Three (Transportation of Stolen Goods in Foreign Commerce) in the Indictment.

Under the advisory Sentencing Guidelines, Romero is subject to a sentence of between 12 and 18 months. The United States recommends that Romero be sentenced to 8 months, a 33% downward

variance, because this sentence is sufficient but not greater than necessary to achieve the sentencing objectives in 18 U.S.C. § 3553(a). Indeed, Romero's profit-making scheme created a local demand for expensive, stolen bicycles. This, in turn, spurred nighttime burglaries in San Francisco and Redwood City. Burglars broke into homes and apartment buildings to steal expensive bicycles, which Romero purchased, disassembled, and transported to Mexico to be sold for profit. Therefore, Romero's international, bicycle fencing scheme played a causal role in diminishing the burglary victims' sense of safety and security in their homes and property. An 8-month sentence is also the average sentence imposed on similarly situated defendants, or those sentenced to imprisonment with the same final base offense level and criminal history category as Romero.

Therefore, in accordance with the sentencing objectives in section 3553(a), Romero should be sentenced to 8 months followed by 3 years on supervised release. Romero should also be ordered to pay $38,977 in restitution and to forfeit the bicycles and bicycle parts seized from his automotive shop on or about April 28, 2021.

## II.     BACKGROUND

### A. Circumstances of the Offense

The facts, including the specific stolen bicycles (Bicycle # 1 through #9) that are the basis for the Indictment, are outlined in the plea agreement (Dkt. 32) filed on March 12, 2025. Briefly, from on or about April 1, 2020, and continuing through on or about April 21, 2021, Romero conspired with a co-conspirator (who lived in Mexico) to acquire high-end performance bicycles that had been stolen by thieves from homes in the Bay Area and to transport those stolen bicycles from the Northern District of California to Mexico, for the purpose of selling the stolen bicycles in Mexico.

Romero purchased the bicycles from known sellers of stolen bicycles and did so with knowledge that the specific bicycles listed in the Indictment were, in fact, stolen. At his automotive shop in San Jose, Romero photographed or caused to be photographed the stolen bicycles and sent those photographs to his co-conspirator. The co-conspirator then posted the photographs of the stolen bicycles on his Facebook sales page, where the stolen bicycles were advertised for sale in Mexico. Romero's co-conspirator used a virtual private network or similar method to block Facebook users (such as the rightful owners of the bicycles) in the United States from viewing his Facebook sales page. Thus, only

Facebook users in Mexico—where the stolen bicycles were resold—could access and view the page and therefore purchase the bicycles.

Romero had the stolen bicycles disassembled and packaged up for delivery at his automotive shop in San Jose. He then arranged to have the packaged-up, stolen bicycles transported or delivered to his co-conspirator in Jalisco, Mexico, for resale there. Once the stolen bicycles were delivered to or received by his co-conspirator in Mexico, the co-conspirator reassembled the bicycles and sold the stolen bicycles to customers in Mexico. Romero's co-conspirator maintained a ledger listing the profits from selling the stolen bicycles and sent Romero a share of the profits.

On April 28, 2021, San Francisco Police Department Officers executed a search warrant at Romero's automotive shop in San Jose, California. Officers found Bicycle #9 disassembled and packaged inside the shop, other stolen bicycles and bicycle parts, two iPhones containing relevant evidence of the crimes, and approximately $206,646 in cash.

### B. Sentencing Guidelines Calculation

In accordance with the parties' plea agreement, Probation has issued the following advisory Guidelines calculation:

a. Base Offense Level, U.S.S.G. §2B1.1(a)(2):  6

b. Specific offense characteristics under U.S.S.G. Ch. 2

- U.S.S.G. §2B1.1(b)(1)(D)  + 6
  (loss is more than $40,000)

- U.S.S.G. §2B1.1(b)(2)(A)  + 2
  (involved 10 or more victims)

- U.S.S.G. §2B1.1(b)(4)  + 2
  (involved receipt of stolen property, and defendant was in the business of receiving and selling stolen property)

- U.S.S.G. §2B1.1(b)(10)(B), (C)  + 2
  (substantial part of fraudulent scheme committed outside of the United States and/or offense otherwise involved sophisticated means)

c. Acceptance of Responsibility:  - 3

d. U.S.S.G. §4C1.1 (*Zero*-Point Offender)  -2

     e.     Adjusted Offense Level:     13

Probation also determined that Romero has zero criminal history points (Criminal History Category I) and is subject to a Guidelines sentencing range of 12 to 18 months. Probation recommends that Romero be sentenced to 6 months (a 50% downward variance) followed by 3 years on supervised release. However, for the reasons that follow, the United States recommends instead that Romero be sentenced to 8 months (a 33% downward variance) followed by 3 years on supervised release.

## III. DISCUSSION

### A. Legal Standards

The Court should impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also* 18 U.S.C. § 3553(a). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the advisory Guidelines. *Id*.

After determining the appropriate advisory Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness considering the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93. Under Section 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) The nature and circumstances of the offenses and the history and characteristics of the defendant;

(2) The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) The need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) The need for the sentence imposed to protect the public from further crimes of the defendant; and

(5) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### B.  Sentencing Recommendation by the United States

The United States recommends that the Court impose on Romero a sentence of 8 months followed by 3 years on supervised release and order him to pay restitution $38,977 in restitution, and to forfeit the bicycles and bicycle parts seized during the search warrant execution.

#### 1.  Nature and circumstances of the defendant's offenses and his history and characteristics

In a year-long scheme, Romero and his co-conspirator knowingly purchased stolen bicycles, dissembled them in San Jose, and transported them to Mexico, where the stolen bicycles were reassembled and sold for profit.  Although the stolen bicycles were advertised for sale via Facebook, Romero and his co-conspirator used a virtual private network to ensure that only Facebook users in Mexico could view the bicycles.  This is because Romero and his co-conspirator knew that they were selling stolen property and, therefore, sought to conceal their criminal conduct.  Thus, Romero did not engage in a one-time lapse in judgment.  Rather, motivated by greed, Romero and his co-conspirator engaged in a well-planned and sophisticated scheme to profit from the sale of expensive stolen bicycles—this lasted for more than a year until they were caught.

What makes Romero's offenses particularly aggravating is that it spurred nighttime burglaries in San Francisco and Redwood City.  Regarding the specific bicycles alleged in the Indictment, police reports indicate that burglars broke into the victims' homes and apartment buildings, went into their garages, and stole those bicycles valued at approximately $38,977 in total.  Regarding Bicycle #4, for instance, burglars shattered the glass plan of the victims' garage door and stole not only Bicycle #4 (valued at $9,000) but also stole seven other bicycles.  The estimated, combined value of all eight stolen bicycles is $31,750—not to mention the damage caused to the victim's garage.  Likewise, regarding Bicycle #8, burglars broke into the victim's garage and stole not only Bicycle #8 (valued at $3,600) but also stole three other bicycles.  The estimated, combined value of all four stolen bicycles is $12,000.

Granted, there is insufficient evidence that Romero purchased all of the stolen bicycles from these nighttime burglaries.  However, Romero's scheme undoubtedly created a demand for expensive, stolen bicycles.  And to meet this demand, thieves burglarized homes and apartment buildings.

Therefore, their interdependent network of criminal activity ultimately violated peoples' sense of safety and security in their homes and property.

Additionally, by piecing together evidence from Romero's cell phones and his co-conspirator's Facebook postings, the government was able to charge Romero with transporting at least eight stolen bicycles (Stolen Bicycles #1 through #8) to Mexico. And Romero pleaded guilty to those charges in Counts Two and Three in the Indictment. Indeed, those bicycles were captured in photographs taken at Romero's automative shop in San Jose and were subsequently recaptured in photographs taken in Mexico by his co-conspirator. But Romero's scheme went on for more than year and at least one stolen bicycle (Bicycle #9) was found in his automotive shop when the search warrant was executed in 2021. There is also other evidence recovered from his cell phones, including photographs of what appear to be dissembled, stolen bicycles and text messages with his co-conspirator about other purportedly stolen bicycles, that together suggest that the eight stolen bicycles that are the basis for Counts Two and Three in the Indictment do not represent the full scope of his criminal conduct. Indeed, police officers found over $206,000 in cash on Romero's person and inside his backpack when they searched his automotive shop in 2021. Four years later, the exact source of these funds remains unclear.

Further, that Romero failed to provide Probation with a completed financial packet is troubling because this omission was Probation's basis for finding that Romero lacks assets and is unable to pay a fine. But Romero has had an automotive shop business since 2018 and had over $206,000 in unexplained cash when his automotive shop was searched. Thus, Romero may have unaccounted for assets.

Nevertheless, Romero does have factors in mitigation. He has no prior criminal history. Romero took responsibility for his offenses by pleading guilty to Counts Two and Three and intends to pay restitution in full to the victims reflected in the Indictment. Romero is also the sole breadwinner for his family, and he and his wife adopted a son, who is now 10 years old and suffers from severe autism requiring constant care.

Accordingly, based on the nature of Romero's offenses and his personal history and characteristics, a sentence of 8 months, which is a 33% downward variance from a Guidelines sentence, is appropriate.

**2.     Need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense**

For the same reasons stated above, a sentence of 8 months also reflects the seriousness of Romero's offenses and promotes respect for the law and constitutes just punishment.

**3.     Need for the sentence to afford adequate deterrence to criminal conduct**

Imposing a sentence of 8 months also promotes general deterrence because it sends a strong message that people who profit from the sale of stolen items and engage in international fencing schemes will receive a significant federal prison sentence.

**4.     The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct**

Further, a sentence 8 months is consistent with the punishment imposed for similarly situated defendants.  As U.S. Probation noted, during the last five fiscal years (FY2020-2024), there were 994 defendants whose primary guideline was §2B1.1, with a Final Offense Level of 13 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 616 defendants (62%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 8 months and the median length of imprisonment imposed was 6 months.

Therefore, the United States' recommended sentence of 8 months is the average sentence imposed on defendants with the same final offense level and criminal history category and who received a prison sentence.  Therefore, a sentence of 8 months would not result in an unwarranted sentencing disparity.

/ / /

/ / /

/ / /

# CONCLUSION

With full consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court sentence Romero to 8 months followed by 3 years on supervised release and order him to pay $38,977 in restitution and to forfeit the bicycles and bicycle parts seized during the search warrant execution.

DATED: July 30, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Michael G. Lagrama*
MICHAEL G. LAGRAMA
Assistant United States Attorney